UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ENGINEERED ABRASIVES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 18 cv 6562 |
| ) | |
| EDWARD C. RICHERME; EDWARD ) | JURY TRIAL DEMANDED |
| RICHERME; and KAREN RICHERME, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## COMPLAINT

Plaintiff Engineered Abrasives, Inc. ("EA") by its undersigned attorneys, for its Complaint and Jury Demand against Defendants Edward C. Richerme, individually; Edward Richerme, individually; and Karen Richerme, individually (collectively "Defendants"), alleges as follows:

## INTRODUCTION

1. EA seeks monetary and/or injunctive relief against Defendants for numerous causes of action, *inter alia*, (i) violation of 15 U.S.C. § 1125; (ii) unfair and deceptive business practices and unfair competition under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*.; (iii) breach of contract; and (iv) unjust enrichment.

2. EA is well known in its industry as a designer, innovator and manufacturer of high quality, highly reliable automated shot peening and blast finishing equipment, and related replacement parts, and supplies, as well as a highly responsive, and proactive service provider for such equipment including installation, maintenance and repair services ("EA's Business"). EA has been engaged in EA's Business for over 45 years and three generations of the owner's family,

and has built a strong reputation for EA's Business and manufacturing and selling high quality equipment, parts, and highly effective and responsible services related thereto.

3. Defendants have used certain EA common law trademarks and its domain name in violation of both the Lanham Act and a settlement agreement between EA and Defendants. Defendants engaged in deceptive and unfair trade practices, and have been unjustly enriched by those actions.

4. EA has suffered damages and will continue to be damaged by Defendants' wrongful acts, as set forth more fully below.

## PARTIES

5. EA is an Illinois corporation with a principal place of business at 11631 S. Austin Ave., Alsip, Illinois.

6. Defendant Edward C. Richerme is an individual residing in Worth, Illinois. Edward C. Richerme was previously employed by EA until October of 2011. Edward C. Richerme's prior duties for EA included serving as a machine technician, builder, designer, and performing various tests on machines in EA's plant.

7. Defendant Edward Richerme is an individual residing in Bremen, Indiana. Prior to 2011, Edward Richerme was employed by EA as a plant superintendent. In this role, he was responsible for the supervision of EA's manufacturing process. Edward Richerme is the father of Edward C. Richerme.

8. Defendant Karen Richerme is an individual residing in Bremen, Indiana. Karen Richerme is the mother of Edward C. Richerme and the wife of Edward Richerme. Defendants Karen Richerme, Edward Richerme, and Edward C. Richerme are hereinafter collectively referred to as the "Defendants."

**JURISDICTION AND VENUE**

9. This Court has original jurisdiction over the subject matter of this civil action pursuant to 15 U.S.C. § 1501, *et seq.*, over which this Court has express subject matter jurisdiction pursuant to 15 U.S.C. § 1121, as well as federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

10. This Court has supplemental jurisdiction over the claims in this Complaint which arise under state statutory and common law pursuant to 28 U.S.C. § 1367(a), since the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

11. This Court has personal jurisdiction over Defendants. Personal jurisdiction is appropriate over Defendants pursuant to 735 ILCS §5/2-209(c), as Defendants purposefully directed their activities to, and/or purposefully availed themselves of the privilege of conducting business in Illinois, the claims and injuries herein arise out of the Defendants' Illinois-related activities, and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.

12. Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391. At least one of the Defendants resides in this judicial district, and a substantial portion of the events or omissions giving rise to the claims herein arose in this judicial district.

**FACTUAL BACKGROUND**

**A. EA's Business**

13. EA is engaged in the business of manufacturing automated blast finishing and shot peening equipment, and in the related business of manufacturing replacement parts for those machines. EA has been a leader in the shot peening industry for nearly half a century, and three generations of the Wern family, EA founders and owners. EA researches, designs, develops,

fabricates, sells, installs and maintains specialized shot peening equipment for the vast majority of the U.S. automotive industry (along with Asia, Mexico, Canada, and Brazil), and the automotive component supplier segment of the market. Some of EA's equipment can be quite large and quite expensive costing upwards of $1,000,000 per unit. This equipment requires a significant upfront investment in materials and customized professional services to produce each unit.

14. EA also provides job shop peening services for its customers using its own EA manufactured peening equipment. The EA peening equipment pressurizes a source of peening media such as very small metal spheres or "shot." The EA equipment controllably sprays the shot under relatively high pressure to direct it against a work piece, for example an automotive drive train component such as a gear. Pressurized peening with the shot alters the surface material properties to strengthen the material and dramatically improve the life and reliability of the component.

15. EA has invested substantial time and resources in developing and sourcing components for its high-quality shot peening equipment, including the pressure vessels used in that equipment, and promoting and selling those products to its customers.

16. EA has a reputation for manufacturing and selling equipment that adheres to or establishes the highest standards of safety and quality. EA's reputation for safety and quality is instrumental to EA's success in a highly competitive marketplace.

17. Among the parts that EA uses and manufactures are shot peening media valves, poly spacer, springs and seats.

**B. The Defendants' Prior Relationship with EA**

18. From 1982 to 2011, Edward Richerme was an employee of EA and performed duties as a machine technician, builder, designer and machine tester. He also was a plant superintendent, supervising EA's manufacturing process.

19. From 1992 to 2011, Edward C. Richerme, the son of Edward Richerme, was also employed by EA as a machine technician and builder.

20. Edward Richerme and Edward C. Richerme did all of this work for the benefit of EA.

21. While employed by EA, Edward Richerme and Edward. C. Richerme had access to EA's proprietary and confidential trade secret information, including but not limited to EA's tooling designs, drawings, fixtures, special designs, spare parts, pricing information, manufacturing, distribution processes, patented machines and patented processes.

22. In 2009, while Edward Richerme remained employed by EA, Edward Richerme and his wife, Karen Richerme, incorporated and were officers of a corporation named ER Parts Inc. ("ER Parts").

23. ER Parts operated from Edward and Karen Richerme's shared residence in Mokena, Illinois, from January 2009 until April 2009, as a short-lived experiment by EA to have a separate parts fulfillment company for EA products.

24. By virtue of his employment with EA and ownership of ER Parts, Edward Richerme and Karen Richerme became familiar with EA's equipment, parts, pricing, and customers.

25. Edward Richerme and Karen Richerme also co-owned a printing business, Carbon Copy, which they also operated from their shared residence in Mokena, Illinois.

26. Through Carbon Copy, Karen and Edward Richerme were hired by EA to make copies of EA documents for use by EA. By virtue of her work through Carbon Copy and her ownership interest in ER Parts, Karen Richerme was familiar with EA's equipment, parts, pricing, and customers.

27. In September 2011, Defendant Edward Richerme abruptly left EA's employment.

28. After September 2011, EA severed its relationship with Karen Richerme and Carbon Copy.

29. In October 2011, EA terminated Edward C. Richerme.

**C. Prior Litigation and Bankruptcy Proceedings.**

30. On information and belief, the Defendants, while still working for or on behalf of EA, took steps to create American Machine Products & Service, Inc. ("AMPS"), a company designed to compete directly with EA, targeting EA customers and using EA products covertly retained by the Defendants from Edward and Karen Richermes' ER Parts business. AMPS was operated out of the Defendants' shared residence in Mokena, Illinois.

31. In 2012, EA filed suit against Edward Richerme, Edward C. Richerme, and AMPS in the Circuit Court of Cook County, Illinois, Chancery Division (the "State Action").

32. EA asserted in the State Action that Edward Richerme, Edward C. Richerme, and AMPS used EA's trade secrets to sell parts for the service and repair of EA's shot peening machines.

33. During this timeframe, AMPS operated the website "www.ampsabrasives.com".

34. During the course of the State Action, an order was entered prohibiting the Defendants from contacting any EA client or customer, in any manner. A true and correct copy of the court's order is attached hereto as Exhibit A.

35. On October 11, 2012, an order was entered in the State Action prohibiting the Defendants from providing a hardened metal seat, hardened seat, or spacer or shot peening spring in any valve supplied to customers, and using EA's part numbers. A true and correct copy of the court's October 11, 2012 order is attached hereto as Exhibit B.

36. On October 11, 2013, EA filed a lawsuit against AMPS, Edward Richerme, and Edward C. Richerme in the United States District Court for the Northern District of Illinois, captioned as *Engineered Abrasives Inc. v. Edward Richerme et al.*, Case No. 1:13-cv-07342, alleging trademark and copyright infringement, unfair competition, and deceptive trade practices (the "Federal Action").

37. On August 5, 2014, Edward Richerme filed for Chapter 7 bankruptcy protection in the United States Bankruptcy Court for the Northern District of Illinois, Case No. 1:14-bk-28683.

38. On March 19, 2015, the District Court entered a default judgment against Edward Richerme, Edward C. Richerme, and AMPS in the Federal Action, jointly and severally, in the amount of $719,814.04.

39. On May 5, 2015, Edward C. Richerme and AMPS each filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Northern District of Illinois, Case Nos. 1:15-bk-16083 and 1:15-bk-16038 (respectively) (collectively, the "Bankruptcy Proceedings").

40. The Bankruptcy Proceedings were later converted to Chapter 7 proceedings.

41. On August 10, 2015, EA filed a lawsuit against AMPS, Edward Richerme, Edward C. Richerme, and Karen Richerme in the United States District Court for the Northern District of Illinois, captioned as *Engineered Abrasives Inc. v. Edward Richerme et al.*, Case No. 1:15-cv-06983, alleging that the Defendants and AMPS defamed and disparaged EA and EA's Business, among other claims (the "Defamation Action").

42. On June 2, 2016, AMPS and the Defendants entered into a settlement agreement with EA in connection with the Defamation Action ("Settlement Agreement"). A true and correct copy of the Settlement Agreement is attached hereto as Exhibit C.

7

43. The Settlement Agreement provides for a permanent injunction that prohibits the Defendants from "making false or misleading statements about EA, its products or services, or its officers or owner[s]." Ex. C, Section 1.1.

44. A breach of the Settlement Agreement permits EA to liquidated damages and other relief, including "emergency injunctive relief and liquidated damages in the amount of $250,000." Ex. C, Section 1.2. The Settlement Agreement also states that "If any of the Parties hereto breach the Agreement in any respect, the releases in their favor shall be null and void as though it had never taken effect." Ex. C, Section 8.b.

45. On August 25, 2016, a sale order was entered in the Bankruptcy Proceeding, Case No. 1:15-bk-10638, in which EA purchased AMPS' business assets as a whole.

46. The August 25, 2016 sale order identified the assets purchased as including: all books and records, part numbers and product numbers; inventories; tools, machines, and equipment listed on the Debtor's Schedule B, including materials and supplies; computers and computer software; all domain names (including without limitation ampsabrasives.com and all related registrar information, passwords, login and registration information for such domain ("the "AMPS Domain Information"); and all records pertaining to the foregoing (collectively, the "Purchased Assets").

**D. The Defendants Continued Using "American Machine Products & Service, Inc." and "www.ampsabrasives.com" Even After Relinquishing Their Rights to Same.**

47. As of August 25, 2016, the rights to do business as "American Machine Products & Service, Inc." and use the website domain name "www.ampsabrasives.com" were transferred to EA.

48. EA uses the website domain name "**www.ampsabrasives.com**" in commerce. Consumers who type in this website domain name are directed to the Engineered Abrasives

8

website.

49. Even though any rights that the Defendants or AMPS held to the Purchased Assets, the AMPS Domain Information, or AMPS' business or intellectual property were transferred to the bankruptcy estate, which in turn was transferred to EA, the Defendants have used and continue to use the name "American Machine Products & Service, Inc." and "www.ampsabrasives.com" in connection with products that compete with EA's Business.

50. For instance, at least between August 25, 2016 and April 4, 2018, Defendants issued purchase orders, order confirmations, and packing slips using the name "American Machine Parts and Service Inc." and listing the AMPS domain name, "www.ampsabrasives.com" as their own, even though this intellectual property belongs to EA, and even though the Defendants are not authorized to do business in Illinois under that name.

51. By continuing to use the "American Machine Products & Service, Inc." name and continuing to list the domain name "www.ampsabrasives.com" in association with the sale of goods competing with EA, Defendants have manufactured, distributed, marketed and sold products in a manner that is likely to cause confusion among retailers and end-user customers concerning the source and origin of the competing products.

**FIRST CAUSE OF ACTION**
**(Violation of 15 U.S.C. § 1125)**
**(Against All Defendants)**

52. EA repeats and realleges the allegations of paragraphs 1-51 as though fully set forth herein.

53. EA acquired the exclusive rights to use the AMPS domain name and AMPS common law trademarks (the "AMPS Trademarks") in commerce upon acquisition of the

9

Purchased Assets and the AMPS Domain Information pursuant to a bankruptcy sale order. (Ex. C).

54. As successor-in-interest to the AMPS Trademarks, EA has valid and enforceable rights in the AMPS Trademarks.

55. Defendants have used in commerce, and without authorization, words, terms, and devices that are likely to cause confusion, mistake, or deception as to the affiliation, connection, or association between competing brands, including the AMPS domain name and AMPS Trademarks. Further, such uses are likely to cause confusion, mistake, or deception as to the origin of competing brands and goods, and suggest an affiliation between EA and the Defendants that does not exist. These uses are in violation of Section 43(a) of the Lanham Act, codified at 25 U.S.C. § 1125.

56. Defendants affixed, applied and used in connection with its sale of goods false designations of origin and false and misleading descriptions and representations, which tend falsely to describe the origin, sponsorship, association or approval by EA of the competing products sold by Defendants. Attached hereto as Exhibit D is a true and correct copy of one such purchase order that the Defendants sent to one of EA's customers.

57. Defendants used one or more of EA's AMPS Trademarks and/or the AMPS domain name with full knowledge that such use was in contravention of EA's exclusive rights, all to the detriment of EA.

58. Defendants' use of the AMPS Trademarks and the AMPS domain name in connection with competing products constitutes false descriptions and representations tending to falsely describe or represent Defendants and their products as being authorized, sponsored, affiliated or otherwise associated with EA.

59. Defendant used the AMPS Trademarks and the AMPS domain name in connection with competing products with the express intent to cause confusion and mistake, to deceive and mislead the purchasing public, to trade upon the high quality reputation of EA and to improperly appropriate for itself the trademark rights of EA.

60. Defendants' acts were willful in nature and constitute the use in commerce of false designations of origin and false and/or misleading descriptions or representations.

61. Defendants have caused and continue to cause serious injury to EA. Accordingly, EA is entitled to damages pursuant to 15 U.S.C. § 1117(a), including, but not limited to, disgorgement of profits, damages sustained by EA, treble damages, and attorneys' fees and costs, in addition to all other appropriate forms of relief.

62. Defendants' past and continuing acts have caused irreparable injuries to EA, and will continue to injure EA unless restrained by the Court. EA is therefore without an adequate remedy at law and is entitled to an injunction under 15 U.S.C. § 1116 to prevent Defendants' further violations of the Lanham Act.

## SECOND CAUSE OF ACTION
### (Unfair Business Practices and Unfair Competition Pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILSC 505/2)
### (Against All Defendants)

63. EA repeats and realleges the allegations of paragraphs 1-62 as though fully set forth herein.

64. Defendants used and/or employed deception, false pretense, misrepresentation, and/or the omission of material facts with the intention that others rely on such deception, false pretense, misrepresentation, and/or omission of material facts, as set forth above in the conduct of trade and/or commerce.

65. By reason of its acts stated above, and by reason of its deceptive trade practices under the Illinois Uniform Deceptive Trade Practices Act, misappropriation, unjust enrichment, and tortious interference, Defendants have committed unfair competition and unfair business practices under 815 ILCS § 505/2 and Illinois common law.

66. EA has suffered and will continue to suffer irreparable harm and damage as a result of Defendants' unfair competition and unfair business practices, in an amount not yet ascertainable, entitling EA to injunctive relief, to recover its actual damages, and other relief under 815 ILCS § 505/10a.

67. Defendants' acts as stated above, were willful and/or undertaken with malice, entitling EA to recover three times the amount of its actual damages, as well as attorneys' fees as provided for under 815 ILCS § 505/10a.

68. Defendants will continue in their unfair competition and unfair business practices unless enjoined by this Court.

## THIRD CAUSE OF ACTION
### (Breach of Contract)
**(Against All Defendants)**

69. EA repeats and realleges the allegations of paragraphs 1-68 as though fully set forth herein.

70. EA and the Defendants signed the Settlement Agreement on June 2, 2016.

71. Defendants breached the Settlement Agreement by making false and misleading statements regarding Defendants' nonexistent affiliation with EA. Ex. C, Section 1.1. As EA owns the AMPS Trademarks and use of the AMPS domain name, the Defendants' use of the AMPS Trademarks and AMPS domain name in connection with the sale of products that compete with EA's products, constitute false and/or misleading statements about EA, including the misleading impression that the Defendants' sale of those products is associated with EA.

72.     By reason of its acts set forth above, the Defendants have breached their Settlement Agreement with EA.

73.     EA has been damaged by Defendants' breach of contract.

74.     Defendants' breach renders EA's "releases in their favor null and void as though it had never taken effect." Ex. C, Section 8.b.

75.     Defendant's breach also entitles EA to seek injunctive relief and liquidated damages in the amount of $250,000. Ex. C, Section 1.2.

### FOURTH CAUSE OF ACTION
### (Unjust Enrichment – in the Alternative)
### (Against All Defendants)

76.     EA repeats and realleges the allegations of paragraphs 1-75 as though fully set forth herein.

77.     Defendants have unjustly retained a benefit from using EA's intellectual property goodwill, and domain name, and the retention of said benefit by Defendants violates fundamental principles of justice, equity, and good conscience.

78.     By reason of their acts as aforesaid, Defendants have committed unjust enrichment under Illinois common law.

79.     EA has suffered and will continue to suffer irreparable harm and damage as a result of Defendants' unjust enrichment, entitling EA to an amount commensurate with the benefit received and retained by Defendant, at least in excess of $75,000.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Engineered Abrasives, Inc., respectfully prays this Court:

 (1) issue a preliminary and permanent injunction enjoining Defendants, and each of their officers, directors, agents, servants, employees, and representatives, and all those acting in concert or participation with Defendants who receive actual notice, from continuing to use EA's common law trademarks, goodwill, and domain names;

 (2) award EA compensatory damages in an amount to be proven at trial;

 (3) award EA punitive or exemplary damages in an amount to be proven at trial;

 (4) award EA liquidated damages of $250,000 and injunctive relief pursuant to the Settlement Agreement;

 (5) declare EA's prior releases of the Defendants under the Settlement Agreement null and void;

 (6) award EA its reasonable attorneys' fees and costs; and

 (7) grant such further relief as the Court deems just and appropriate.

Dated:  September 26, 2018              ENGINEERED ABRASIVES, INC.

                                        By:  /s/Leif R. Sigmond, Jr.

                                        Leif R. Sigmond, Jr. (No. 3204980)
                                        (*lsigmond@bakerlaw.com*)
                                        Jennifer Kurcz (No. 6279893)
                                        (*jkurcz@bakerlaw.com*)
                                        Suzanne M. Alton de Eraso (No. 6317254)
                                        (*saltondeeraso@bakerlaw.com*)
                                        **BAKER & HOSTETLER LLP**
                                        191 North Wacker Drive, Suite 3100
                                        Chicago, Illinois 60606-1901
                                        Telephone: (312) 416-6200
                                        Facsimile: (312) 416-6201

                                        *Counsel for Plaintiff Engineered Abrasives, Inc.*