IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ENGINEERED ABRASIVES, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> EDWARD C. RICHERME, EDWARD ) <br> RICHERME, and KAREN RICHERME, ) <br> ) <br> Defendants. ) | Case No. 18 C 6562 |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

This Court previously determined that the defendants—Edward C. Richerme, Edward Richerme, and Karen Richerme—are entitled to attorney's fees incurred in connection with litigation brought by plaintiff Engineered Abrasives (EA). Dkt. no. 129 at 5. This order determines the size of that award. EA argues that the Richermes have not sufficiently proven that they have incurred more fees and expenses than the $30,00 that they've already paid to defense counsel and that the fee award should therefore be capped at that amount. The Richermes contend that, although they've only paid $30,000 so far, they've incurred a total $173,419 worth of fees and expenses that the Court should award. For the reasons below, the Court concludes that the Richermes have not established that they are entitled to more than $30,000.

### Background

In September 2018, EA sued the Richermes for breach of contract, as well as violations of federal and state law. The parties had previously entered into a written

settlement agreement in which the Richermes agreed not to make any false or misleading statements about EA or its products or services.  In its complaint, EA alleged that the Richermes breached the settlement agreement by using certain trademarks and domain names "in connection with the sale of products that compete with EA's products."  Compl. ¶ 71.  EA alleged that this use "constitute[d] false and/or misleading statements about EA, including the misleading impression that the Defendants' sale of those products is associated with EA."  *Id.*

In February 2020, EA moved for partial summary judgment.  The Court denied the motion and referred the case to a magistrate judge to conduct a settlement conference.  In December 2020, after the parties participated in an unsuccessful settlement conference before a magistrate judge, the Court set the case for trial in June 2021.

In January 2021, EA filed a motion to voluntarily dismiss the case with prejudice.  The Court granted the motion, conditioned on the Richermes' right to file a petition for attorney's fees.  The prior settlement agreement between the parties contained the following provision:  "Any litigation to enforce the terms of the Agreement shall provide the prevailing Party with recovery of reasonable attorney's fees and costs incurred in connection with any action to enforce the Agreement."  Defs.' Opening Mem., Ex. B ¶ 5.  Based on this provision, the Richermes filed a motion for attorney's fees on February 5, 2021, arguing that "as the prevailing parties," they were "entitled to recover their reasonable attorneys' fees and costs incurred in connection with EA's failed attempt to enforce the Settlement Agreement."  Defs.' Mot. for Att'ys Fees (dkt. no. 125) at 3.

In an order issued on March 14, 2021, the Court concluded that the Richermes

2

were entitled to attorney's fees with respect to the breach of contract claim (but not the other claims that EA had asserted). The Court strongly urged the parties to work together to come up with a mutually acceptable fee award, but they were unable to do so. Accordingly, the Richermes filed a motion on June 16, 2021, asking the Court to award them $173,419 in attorney's fees. EA disputes the amount, contending that the Richermes are entitled to no more than $30,000.

As part of their motion for fees, the Richermes attached a set of documents, including an invoice dated December 31, 2019, an invoice dated April 2, 2021, and a retainer agreement between the Richermes and defense counsel. Believing these documents to be incomplete, EA filed a motion titled "Plaintiff's Motion for Instructions Pursuant to L.R. 54.3(g)," asking the Court to determine what materials the Richermes were obligated to turn over under the Local Rule. *See* Dkt. no. 130. The Court held a telephonic hearing on April 28, 2021 and directed the Richermes to provide any evidence of payment of attorney's fees. In compliance with this order, the Richermes sent EA bank statements indicating that they paid $30,000.

On September 10, 2021, the Court, at its own instance, set a telephonic hearing regarding the Richermes' motion for attorney's fees. At this hearing, held on September 13, 2021, defense counsel advised the Court that the two invoices previously produced to EA (dated December 31, 2019 and April 2, 2021) had been created after the Court granted the Richermes' motion for attorney's fees and had both been sent to the Richermes in early April 2021. Defense counsel further stated that, aside from these invoices, the Richermes had only been sent one other invoice in connection with this litigation. This invoice, dated July 12, 2019, was later submitted by defense counsel to

3

the Court on September 17, 2021.

The Court also held an evidentiary hearing regarding the Richermes' motion on September 29, 2021.  In its order setting the hearing, the Court stated:

> The Court has determined that a brief evidentiary hearing is required on defendants' motion for attorney's fees.  The subjects about which the Court intends to inquire concern whether and the extent to which the fees sought by defendants were "incurred" within the meaning of the parties' agreement, the nature of any understanding between defendants and counsel, and invoicing by defendants' counsel.  The Court also reserves the right to inquire into other matters relevant to the motion for attorney's fees.  The persons available must include (1) the defendant/corporate representative most knowledgeable regarding these matters, who the Court will call upon to testify under oath, and (2) lead counsel for defendant, who because he is counsel of record will not be called upon to testify under oath but will be expected to answer questions regarding the topics about which the Court intends to inquire.

Dkt. no. 153.

After the hearing, EA filed a response to the Richermes' status report containing the July 2019 invoice.  In its response, EA argued that there were material discrepancies between the December 2019 and July 2019 invoices, suggesting that the December 2019 invoice was inflated to increase the Richermes' fee award.  The Richermes denied this in a reply filed on October 4, 2021.

## Discussion

The parties agree that Illinois law applies.[1]  Under Illinois law, it is the burden of the party seeking an award of attorney's fees to prove its entitlement to the fees sought. *Schorsch v. Fireside Chrysler-Plymouth, Mazda, Inc.*, 286 Ill. App. 3d 1028, 1033, 677

---

[1] EA states that Illinois law applies, Pl.'s Resp. Br. at 2, and the Richermes concede this by not disputing EA's contention.  *See generally* Defs.' Reply Br.  Both parties rely heavily on Illinois state law cases in their briefs.  *See, e.g.*, Pl.'s Resp. Br. at 2–3; Defs.' Reply Br. at 1–5.

N.E.2d 976, 979 (1997). Because the parties' settlement agreement awards "reasonable attorney's fees and costs *incurred*," the Richermes must establish that they, in fact, "incurred" the amount they are seeking from EA. Defs.' Opening Mem., Ex. B ¶ 5 (emphasis added). Some factors that Illinois courts consider when determining whether fees and costs were incurred are whether there was an agreement to pay for legal services; whether the party paid legal services; whether the party was billed for legal services; and whether counsel expected to be paid by the party for legal services. *Kroot v. Chan*, 2019 IL App (1st) 181392, ¶ 23, 125 N.E.3d 531, 537.

The Richermes argue that they are entitled to $173,419 in attorney's fees. Their evidence in support of this contention includes: (1) a signed retainer agreement; (2) bank statements; (3) two invoices created after the fact, in connection with the fee petition (separately, the "December 31 invoice" and the "April 2021 invoice"); and (4) one contemporaneously created invoice (the "July 2019 invoice"). Although the parties heavily contest the significance of each of these documents, the dispute regarding the two invoices created in connection with the fee petition is the most significant for the purposes of this decision, as they are the only documents indicating that the Richermes incurred more than $30,000. That said, the Richermes' other evidence is offered to support the authenticity and accuracy of these invoices and therefore must be assessed as well.

**1. The retainer agreement**

In support of their motion for fees, the Richermes submit a written retainer agreement that states:

> We, Edward C. Richerme, Edward Richerme and Karen Richerme . . . hereby retain and employ [defense counsel] as our attorneys to (1) appear

>in the matter *Engineered Abrasives, Inc. v. Edward C. Richerme, Edward Richerme and Karen Richerme*, case number 18 cv 06562 pending in the United States District Court for the Northern District of Illinois . . . and (2) to tender the Complaint in the 2018 Case to Liberty Mutual Insurance Company for defense and indemnity.

Defs.' Opening Br., Ex. E at ECF p. 2 of 3.

This agreement is unquestionably evidence that the Richermes agreed to pay defense counsel for legal services. It states that they "agree to pay [defense counsel] for time spent and costs incurred." *Id.* It also specifies the rates for different types of attorneys and staff members, and it provides an extensive (but notably not comprehensive) list of tasks for which the Richermes could be billed. *Id.* Additionally, the agreement states that the Richermes agree to pay "all court costs, arbitration costs, filing fees, subpoena costs, deposition and court reporter costs, and any other costs directly incurred in investigating or litigating the foregoing matters." *Id.*

EA's attempts to discredit the retainer agreement fall short. First, EA argues that the agreement "anticipates that another entity—Liberty Mutual—will pay for the defense" because the agreement "expressly limits defense counsel's representation to (1) filing an appearance and (2) tendering the defense of the lawsuit to an insurance company." Pl.'s Resp. Br. at 4, 5. But although the agreement does provide that defense counsel was to (1) "appear" in the case and (2) "tender the [c]omplaint" to Liberty Mutual, it does not limit defense counsel to just these two acts, as EA seems to contend. Rather, the agreement contemplates that defense counsel would engage in a variety of legal services, including writing letters, reviewing files, conducting legal research, and preparing court papers. Furthermore, the language of the agreement expressly contradicts EA's assertion that the parties believed that Liberty Mutual would

6

pay for the defense. It states: "In consideration for the legal services rendered, Client agrees to pay [defense counsel] for time spent and costs incurred." Defs.' Opening Br., Ex. E at ECF p. 2 of 3.

Second, EA argues that the parties believed Liberty Mutual would pay for the Richermes' representation in the lawsuit because defense counsel had already filed an appearance and engaged in discussions with Liberty Mutual before the parties executed the retainer agreement. Again, however, the language of the retainer agreement indicates that the Richermes were responsible for "time spent and costs incurred," regardless of whether Liberty Mutual would defend or indemnify them. Moreover, as the Richermes point out, defense counsel worked on the case prior to the execution of the retainer agreement because they had been representing the Richermes on other matters since 2015—not because they thought they had a guarantee that the insurer would pay for their legal services.

Third, EA argues that the Richermes "have taken inconsistent positions as to whether the Retainer Agreement represents the complete understanding with defense counsel as to the terms of their agreement and rates to be paid." *Id.* In support of this contention, EA cites the Richermes' statement that their only agreement with defense counsel was the retainer agreement, arguing that this statement contradicts their later claim that defense counsel raised their rates in an agreement separate from the retainer agreement. But EA takes the Richermes' statement out of context. They made this statement in response to EA's suggestion that "Defendants and defense counsel had some additional or different understanding with respect to the payment of fees different than that reflected in [the retainer]." Dkt. no. 130 at 2. Interpreting EA's contention as

7

an accusation that the Richermes "created a fake retainer agreement for the purpose of the fee petition," the Richermes sought to clarify that the retainer agreement was the only agreement between them and defense counsel and that there was no "secret" agreement. Defs.' Opening Br. at 7. In light of this background, the Court finds that there is no inconsistency between the Richermes' claim that the retainer agreement was the only agreement and their claim that defense counsel's rates were modified under an understanding separate from the retainer agreement.

Lastly, EA contends that defense counsel's conduct in this case conflicted with the terms of the retainer agreement because counsel never billed the Richermes during the litigation. The term "never" is inaccurate. As demonstrated by the invoices and the bank statements, the Richermes were contemporaneously billed once—though only once—and made a partial payment on that bill. But even if the Richermes had never been billed, that would not contradict the terms of the retainer agreement because the agreement did not specify the frequency with which counsel would send bills.

In sum, the retainer agreement supports the Richermes' motion for fees.

2. **The bank statements**

The evidence demonstrates that the Richermes paid $30,000 to defense counsel for legal services provided in this case. During the September 13, 2021 hearing, defense counsel stated that the Richermes paid defense counsel $30,000 as part of the retainer agreement, and defense counsel put this money in his law firm's trust account, from which it was withdrawn to cover fees and costs incurred in this litigation. The bank statements the Richermes provided demonstrate that the $30,000 retainer was transferred from the trust account to the law firm's account in two separate transfers—

about $28,500 on July 12, 2019 and the rest on April 2, 2021.

EA makes two arguments with respect to the bank statements, but neither is persuasive. First, EA argues that there is a discrepancy between the line item in the December 2019 invoice that indicates that a $30,000 retainer was applied to the Richermes' balance and the bank statements that show that the retainer was deposited by counsel in two separate transfers. Dkt. no. 136 at 3. This inconsistency is more apparent than real, however. As defense counsel explained, the invoice dated December 2019 was actually created in April 2021 in connection with the motion for fees. By that point, both transfers had been made, so overall the Richermes had paid $30,000 as the line item indicates. Thus there is no inconsistency between this line item and the bank statements.

EA also argues that "there is no evidence that the money transferred from the trust was used to pay for any specific legal work" because "there is no evidence tying the payment to any particular fees for services." *Id.* at 7–8. Although this may be true, EA does not give the Court any reason to think this should affect the outcome of the case. The object of this inquiry is to determine whether the Richermes have established that they did, in fact, incur $173,419 in legal fees. Thus it does not matter whether the much smaller amount that was already paid was for any particular work.

3. **The invoices**

Lastly, the Richermes submit three invoices in support of their motion for fees. The July 2019 invoice was sent to the Richermes during the litigation. After it was sent to the Richermes, defense counsel transferred about $28,500 of the Richermes' $30,000 retainer from the law firm's client trust account into the firm's own account to

9

pay for legal services that had been rendered. In contrast, the invoice dated December 2019 and the April 2021 invoice were sent to the Richermes in April 2021—after the Court ruled that the Richermes were entitled to attorney's fees. As defense counsel explained, these invoices were created in order to separate the time entries relating to the breach of contract claim (for which the Richermes were entitled to a fee award) from those relating to other claims (for which the Richermes were not entitled to a fee award). These invoices aside, defense counsel did not send any other invoices to the Richermes between July 2019 and April 2021.

Because the July 2019 invoice was contemporaneously created and paid for by the Richermes' retainer, this Court finds it to be an accurate representation of the costs and fees incurred by the Richermes during the period between October 22, 2018 and July 11, 2019. This invoice does not support the Richermes' contention that they incurred over $30,000 in costs and fees, however, because the invoice's total is only approximately $28,500.

Only the December 2019 and April 2021 invoices suggest that the Richermes incurred more than $30,000 in fees and costs. The time entries listed in these invoices add up to over $138,000 in legal services. But these time entries are, in significant respects, inconsistent with the time entries in the July 2019 invoice, despite the fact that they supposedly cover the same period of time. The invoice dated December 2019 contains time entries spanning from August 26, 2018 through December 31, 2019; the July 2019 invoice covers the period between October 22, 2018 and July 12, 2019. For the overlapping period between October 22, 2018 and July 12, 2019, there are numerous discrepancies between the time entries in the December 2019 invoice and

those in the July 2019 invoice.

First, there are dozens of new entries in the invoice dated December 2019 that did not appear in the July 2019 invoice—the one that was actually sent to the Richermes more or less contemporaneously with the work being performed. As EA points out, the December 2019 invoice contains dozens of entries by attorney Nathan Karlsgodt (thirty-five, to be exact), whereas the July 2019 invoice contains only two. Similarly, there are about a hundred new entries for attorney Stan Kitzinger in the invoice dated December 2019 that were not included in the July 2019 invoice.

The Richermes' explanation for these discrepancies is suspect. They claim that these entries were initially billed under incorrect matter numbers associated with other matters but that they were corrected when the fee petition was prepared. The Court finds it implausible that defense counsel mislabeled over a hundred different time entries over the course of about nine months. The large number of extra entries in the invoice dated December 2019 is especially concerning given that the July 2019 invoice supposedly covers entries for the entire case, whereas the December 2019 invoice supposedly covers only entries related to the breach of contract claim, a more limited universe.

In addition to these new entries, there are also discrepancies between the number of billed hours on several entries in the invoice dated December 2019 and the billed hours on those same entries in the July 2019 invoice. Specifically, there are at least five entries in the December 2019 invoice that list a higher number of hours billed despite being otherwise identical to entries in the July 2019 invoice (i.e., the same description, attorney, and date). These discrepancies suggest that the entries in the

11

invoice dated December 2019, which was created to support the fee petition, were altered to increase the total amount of hours spent in connection with the Richermes' case. Overall, for the same nine-month period (October 22, 2018 to July 12, 2019), the December 2019 invoice contains about $20,000 more in costs and fees than the July 2019 invoice.

These discrepancies undermine the reliability of both the December 2019 and April 2021 invoices. Because these invoices were created after the fact, they're not as reliable as contemporaneously created documents like the July 2019 invoice. To create the December 2019 and April 2021 invoices, defense counsel categorized and relabeled over a hundred time entries years after they were first recorded. The significant discrepancies between the invoice dated December 2019 and the July 2019 invoice, at a minimum, undermine the reliability of the Richermes' submission as well as the proposition that the amounts claimed were "incurred." Given the significant and insufficiently explained discrepancies, the Court excludes these invoices from its calculation of the Richermes' fee award.

Without these invoices, however, the Richermes have no support for a fee award larger than $30,000. The remaining evidence—the Richermes' retainer, the amount transferred into defense counsel's bank account, and the July 2019 invoice—certainly establishes that they incurred $30,000 in costs and fees. But the reliable evidence does not establish that they incurred any more than that. Although it is certainly the case that the Richermes incurred some additional amount of fees and costs after July 2019, as established by court appearances and filings, it is impossible for the Court to discern *how much* they incurred overall. Because it is the burden of the movant to demonstrate

an entitlement to the requested fees and the Richermes provide no reliable evidence demonstrating how much they've incurred above $30,000, the Court concludes that the appropriate award is limited to $30,000.

## Conclusion

For the foregoing reasons, the Court awards the Richermes a total of $30,000.00 in attorney's fees and expenses.

```
                                        _____
                                              MATTHEW F. KENNELLY
                                              United States District Judge
```

Date: December 6, 2021